NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL R. GORE, JR., | : |
| Petitioner, | : Case No. 3:17-cv-00223 (BRM) |
| v. | : |
| STEVEN JOHNSON, et al., | : **OPINION** |
| Respondents. | : |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a writ of habeas corpus filed by Petitioner Michael R. Gore, Jr., ("Petitioner"), a state prisoner proceeding *pro se* with a petition filed pursuant to 28 U.S.C. § 2254 (the "Petition"). (*See* ECF No. 1.) Respondents Steven Johnson and the Attorney General for the State of New Jersey ("Respondents") filed an Answer to the Petition (the "Answer"). (*See* ECF No. 12.) Having reviewed the submissions filed in connection with the petition and for the reasons set forth below, the Petition will be **DENIED,** and a certificate of appealability shall not issue.

**I.    BACKGROUND**

On direct appeal, the New Jersey Supreme Court recounted the following salient factual background of Petitioner's case:

> On August 7, 2000, while en route to a friend's house, defendant passed by the home of Victoria Colton. Colton was a close family friend whom he regarded as a grandmother. Seeing her dog in the yard, he stopped to play with it and then noticed that Colton's back door was open. Defendant entered the house and found her purse unattended on a chair. As he removed some money from the purse, she emerged from an upstairs room, discovered the theft in progress, and threatened to call the police. Defendant went upstairs and attacked her, grabbing her by the neck and garroting her with a telephone cord from her bedroom. When Colton showed some

continuing signs of life, he got a knife from the kitchen, returned to the bedroom, and cut her throat. That evening and the following morning, Colton's MAC card was used three times to withdraw cash from ATM machines. All three transactions were recorded on surveillance cameras. Colton's body was found in her bedroom on August 8, 2000, by her friends, Lisa Pointon, defendant's step-sister, and Christine Gore, his mother.

In investigating the homicide, the police obtained videotapes of the ATM transactions. Defendant's father, step-sister, and step-mother viewed the videotapes, which showed the individual making the withdrawals from Colton's bank account attempting to hide his face. The person wore a shirt bearing a distinctive logo. Defendant's father identified the person on the ATM videotapes as his twenty-five-year-old son. Also, the same evening that defendant's step-sister viewed the videotapes, she found at her parents' house a shirt with a distinct logo that matched the shirt worn by the individual on the ATM videotapes. After discussing the discovery with her father, she telephoned the police, and officers came to retrieve the shirt.

At about 3:30 a.m. on August 10, 2000, while the police were actively looking for him in connection with the homicide, defendant turned himself in at the Trenton Police Department on an arrest warrant. The warrant was based on his having left a halfway house illegally on July 25, 2000. Two officers placed him under arrest and took him to a cell where he was left alone for several hours. Later in the day, defendant was administered *Miranda* warnings, signed a waiver card, and agreed to be interrogated by Detective Rios.

According to Rios, defendant initially made an informal statement in which he first denied having a MAC card. Then, after being confronted with the shirt retrieved from his parents' home and told that he appeared on surveillance videos wearing that shirt as he withdrew money with the victim's MAC card, defendant broke down weeping and confessed to killing Colton. He told Rios that he took her MAC card, explained how he knew her PIN number, and said that he used the card to obtain money to purchase drugs and alcohol. During this portion of the interrogation, Rios took handwritten notes that later were converted to a supplemental police report.

Defendant further agreed to provide a formal confession, which Rios transcribed on a word processor, in a question-and-answer format. The detective would type each question into the word processor before posing it and, as defendant answered the question, Rios typed in the response, thereby creating a transcribed statement as it was

being provided. After Rios had taken down three pages of a formal statement from defendant in that manner, a lawyer retained by defendant's family arrived and Rios stopped the transcription process. The attorney and defendant conferred, and Rios was requested to cease speaking to defendant. As a result, the formal statement that Rios had been transcribing was neither reviewed nor signed by defendant.

A Mercer County grand jury returned a four-count indictment charging defendant with first-degree murder, *N.J.S.A.* 2C:11–3; first-degree felony murder, *N.J.S.A.* 2C:11–3a(3); first-degree robbery, *N.J.S.A.* 2C:15–1; and third-degree possession of a weapon (knife) for an unlawful purpose, *N.J.S.A.* 2C:39–4(d). Defendant pled not guilty and filed a pretrial motion to suppress the shirt obtained by the police. A hearing also was conducted regarding defendant's informal confession and formal transcribed statement. For purposes of the *Rule* 104 hearing, both statements were introduced into evidence, without objection, after foundations for each were laid. *See N.J.R.E.* 104(c). After receiving testimony, the court found that the State had proven, beyond a reasonable doubt, that defendant was advised of his *Miranda* rights, both verbally and by reviewing and signing a written version. Further, the court found, given the nature of defendant's statement, its detail, its contents, and the manner in which it was given, that it was freely and voluntarily made; accordingly, the statement was determined to be admissible at trial.

[. . .]

The jury convicted defendant on the four counts. The court merged the felony-murder count into the murder conviction and sentenced defendant to a term of life imprisonment, subject to a thirty-year period of parole disqualification. The court also sentenced defendant on the first-degree robbery conviction to a consecutive term of eighteen years in prison, subject to a nine-year period of parole disqualification, and to a concurrent term of five years on the conviction for third-degree possession of a weapon for an unlawful purpose. All sentences were made to run consecutive to a sentence that defendant already was serving for a prior, unrelated robbery.

*State v. Gore*, 15 A.3d 844, 846–50 (N.J. 2011) (footnotes omitted).

## II. PROCEDURAL HISTORY

Petitioner appealed his conviction and sentence. *See State v. Gore*, Indictment No. 01-091181, 2009 WL 3460261 (N.J. Super. Ct. App. Div. Oct. 26, 2009). The Appellate Division

reversed Petitioner's conviction based upon the trial court's admission into evidence of a document that memorialized Petitioner's transcribed, but unacknowledged, formal confession. *See id.* at *5. The State subsequently petitioned the New Jersey Supreme Court for certification, which the court granted. *See Gore*, 15 A.3d at 846. The Supreme Court reversed the Appellate Division's decision, reinstated Petitioner's conviction, and remanded the matter to the Appellate Division for consideration of sentencing issues. *See id.* at 857. Petitioner was resentenced on October 12, 2012 to life in prison with a thirty-year period of parole ineligibility for his murder conviction, and a consecutive eighteen years in prison with a nine-year period of parole ineligibility. (*See* ECF No. 12-2 at 3.)

On June 28, 2010, Petitioner filed an application for Post-Conviction Relief ("PCR"). (*See* ECF No. 12-2 at 167-68.) Following oral argument, Petitioner's PCR was denied. (*See id.* at 196-217.) On appeal, the Appellate Division affirmed the PCR court's decision. *See State v. Gore*, No. A-4837-13T4, 2016 WL 3582169, at *8 (N.J. Super. Ct. App. Div. July 5, 2016). Petitioner's request for certification to the New Jersey Supreme Court was denied. *See State v. Gore*, 154 A.3d 701 (N.J. 2016).

In January 2017, Petitioner filed the instant habeas application. (*See* ECF No. 1.) His petition raises the singular claim that the trial court improperly denied his Sixth Amendment right to represent himself at trial. (*See id.* at 5.) On April 24, 2017, the State filed a motion to dismiss the Petition, arguing that (1) Petitioner failed to state a claim for relief because his Petition did not challenge the proper Judgement of Conviction, and (2) the Petition was time-barred. (*See* ECF No. 7-2 at 6-7.) On December 28, 2017, this Court denied the State's motion to dismiss and directed the State to file a full and complete answer. (*See* ECF Nos. 10 & 11.) On February 11, 2018, the State submitted their Answer. (*See* ECF No. 12.)

### III. HABEAS CORPUS LEGAL STANDARD

A petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is the proper mechanism for a state prisoner to challenge the fact or duration of his confinement, where the petitioner claims his custody is in violation of the Constitution or the laws of the United States. *See* 28 U.S.C. § 2254(a); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Preiser v. Rodriquez*, 411 U.S. 475, 498-99 (1973). A habeas petitioner bears the burden of establishing his entitlement to relief for each claim presented in the petition. *See Harrington v. Richter*, 562 U.S. 86, 98 (2011).

The standard used in reviewing habeas claims under § 2254 depends on whether those claims have been adjudicated on the merits by the state court. If they have not been adjudicated on the merits, the Court reviews de novo both legal questions and mixed factual and legal questions. *See Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). If the state court adjudicated the claim on the merits, then 2254(d) limits the review of the state court's decision as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding . . . .

28 U.S.C. § 2254(d). If a claim has been adjudicated on the merits in state court,[1] this Court has

---

[1] "[A] claim has been adjudicated on the merits in State court proceedings when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground." *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009) (quoting *Thomas v. Horn*, 570 F.3d 105, 117 (3d Cir. 2009)). "Section 2254(d) applies even where there has been a summary denial." *Pinholster*, 563 U.S. at 187. "In these circumstances, [petitioner] can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [state court's] decision." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 98 (2011); *see also*

"no authority to issue the writ of habeas corpus unless the [state court's] decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 567 U.S. 37, 40 (2012) (quoting 28 U.S.C. § 2254(d)).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. *See Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA." *Parker*, 567 U.S. at 48-49 (quoting 28 U.S.C. § 2254(d)(1)). Thus, while decisions of lower federal courts "may be helpful to us in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent," cases not decided by the Supreme Court are not the "legal benchmark against which to compare the state decision." *See Fischetti v. Johnson*, 384 F.3d 140, 149 (3d Cir. 2010) (internal citations and quotations omitted). "The Supreme Court itself appears to adopt this approach, since it has pointed to decisions of federal and state appeals courts as evidence that an interpretation of Supreme Court precedent was not objectively unreasonable." *Id*. (citing *Price v. Vincent*, 538 U.S. 634, 643 & n.2 (2003)).

---

*Johnson v. Williams*, 568 U.S. 289, 301 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted.").

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court applies a rule that "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result.]" *Williams*, 529 U.S. at 405-06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A]n unreasonable application of federal law," however, "is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Williams*, 529 U.S. at 410).

## IV. DECISION

Petitioner argues the trial court violated his Sixth Amendment right to represent himself when the court denied his request to proceed *pro se* at trial. (*See* ECF No. 1 at 5.) At a pretrial hearing, one day before jury selection was scheduled to begin, Petitioner's trial counsel indicated to the court that Petitioner had "some concerns" regarding his counsel. (*See* ECF No. 12-3 at 121.) Petitioner explained to the court that he felt his trial counsel had not properly prepared for the case and that he and his attorney had "a serious conflict of what we both think need[s] to be done in this case." (*See id.* at 122-23.) Towards the end of a lengthy colloquy between Petitioner and the court regarding Petitioner's concerns over his defense counsel, the following exchange occurred:

> THE COURT: Mr. Gore, you'll have time at the conclusion to discuss any of your other concerns with Mr. Somers [Petitioner's defense attorney], but you just can't keep shouting on, all right. We're going to have to move through this list, and then you can speak privately with Mr. Somers.
>
> THE DEFENDANT: What if I want to represent myself?

7

>THE COURT: Well, it is a little late for that.
>
>THE DEFENDANT: It's a little late for that.
>
>THE COURT: A little late for that.
>
>THE DEFENDANT: I mean, this guy is not getting nothing done in my case. [Speaking to Corrections Officer] Can I go back man?
>
>CORRECTIONS OFFICER: Turn around.

(*Id*. at 124.)

During the remainder of the pretrial hearing, Petitioner did not speak. (*See generally* ECF No. 12-3.) Upon conclusion of the hearing, the trial court asked both parties whether there were any additional issues. (*See* ECF No. 12-3 at 132.) Petitioner remained silent. (*See id*.)

On May 25, 2005, after the jury had been selected, Petitioner again requested to "put some things on the record." (*See id*. at 171.) Petitioner again expressed his displeasure with his attorney and stated that he felt he and his counsel disagreed about how his defense should be conducted. (*See id*. at 171-76.) Petitioner did not again mention representing himself. (*See id*.) In fact, it was not until Petitioner's sentencing four months later that he ever referenced his alleged request to proceed *pro se*. (*See* ECF No. 12 at 25; *see generally* ECF Nos. 12-3, 12-4.) At the sentencing, Petitioner interrupted the proceeding and stated:

>THE DEFENDANT: Excuse me, Your Honor.
>
>THE COURT: Yes, sir.
>
>THE DEFENDANT: Can I please be excused. I don't want to be here. I really don't want to be here. I don't want to listen.
>
>THE COURT: Well, you know, you have a right to speak on your own behalf before I sentence you.
>
>THE DEFENDANT: I don't want to speak.
>
>THE COURT: There is nothing you want to say?

> THE DEFENDANT: I tried to speak before the fact and represent myself; you wouldn't let me do that. Then I ain't get no representation from counsel, and he didn't put on no defense for me. I asked you to represent myself before the fact because he was just put on my case less than -- no more than sixty days before my trial started. You wouldn't do that. I don't want to take part in no more proceedings.

(ECF No. 12-4 at 70.)

Petitioner was permitted to waive his right to be present at sentencing and he exited the courtroom. (*See id.* at 71.)

On direct appeal, the Appellate Division rejected this claim, holding that Petitioner's request to represent himself was not "clear and unequivocal," nor was it timely made. *See Gore*, 2009 WL 3460261, at *2, *rev'd on other grounds*, 15 A.3d 844. Specifically, the Appellate Division reasoned:

> On appeal, defendant claims through counsel that we should reverse his conviction because he was denied his right to self-representation. We disagree, determining after a thorough review of the record in the matter that no unequivocal request for self-representation was made and that defendant's equivocal comment regarding self-representation, made at the commencement of trial, was untimely.
>
> It is well settled that the Sixth Amendment grants a defendant the right to represent himself in a criminal proceeding. *State v. Gallagher*, 274 *N.J. Super.* 285, 294 (App. Div. 1994) (citing *Faretta v. California*, 422 *U.S.* 806, 821, 95 *S. Ct.* 2525, 2534, 45 *L. Ed. 2d* 562, 574 (1975)). "[W]hile a defendant has the constitutional right to dispense with counsel, there is a strong presumption against waiver." *State v. Buhl*, 269 *N.J. Super.* 344, 360 (App. Div.), *certif. denied*, 135 *N.J.* 468 (1994). Moreover, "the right to self-representation is not an absolute. . . . A defendant may invoke the right to self-representation only if he makes a knowing and voluntary waiver of counsel." *State v. Reddish*, 181 *N.J.* 553, 587 (2004). Of significance to the present case, "[t]he need for an *unequivocal* request for self-representation by a defendant is a necessary prerequisite to the determination that the defendant is making a knowing and intelligent waiver of the right to counsel."

9

*State v. Figueroa*, 186 *N.J.* 589, 593 n.1 (2006) (emphasis supplied). Furthermore,

> like any other request for substitution of an attorney, a defendant's decision to dismiss his lawyer and represent himself must be exercised in a timely fashion. The right of self-representation is not a license to disrupt the criminal calendar, or a trial in progress.

[*Buhl, supra,* 269 *N.J.Super.* at 362.]

The record reflects that at a pre-trial hearing held on May 23, 2005, one day before jury selection, a discussion occurred regarding the parties' witness lists. During its course, defendant expressed dissatisfaction regarding the extent of the investigation undertaken by his present counsel, who had been appointed to represent defendant approximately two months earlier.[1] [FN1: Defendant's case had previously been designated as a capital one, and he had been assigned two attorneys specializing in such cases.] After several interruptions by defendant as the State's witness list was being discussed, he was admonished by the trial judge, who stated that defendant could discuss his concerns privately with his attorney at a later time, but that he could not "just ... keep shouting on." The following exchange then occurred:

> THE DEFENDANT: What if I want to represent myself, can I do that?
>
> THE COURT: Well, it is a little late for that.
>
> THE DEFENDANT: It's a little late for that.
>
> THE COURT: A little late for that.
>
> THE DEFENDANT: I mean, this guy is not getting nothing done in my case.
>
> Can I go back, man?

At this point, defendant was taken from the courtroom.

Although defendant continued to express dissatisfaction with his counsel on succeeding days, he did not raise the possibility of self-representation again at any point during the trial. However, at sentencing, defendant stated in connection with a request that he be removed from the courtroom during the sentencing proceedings:

> I tried to speak before the fact and represent myself; you wouldn't let me do that. Then I ain't get no representation from counsel, and he didn't put on no defense for me. I asked you to represent myself before the fact because he was just put on my case less than-no more than sixty days before my trial started. You all wouldn't do that.
>
> We do not regard defendant's one-time, tentative inquiry regarding the possibility of self-representation on the eve of trial to be either timely or unequivocal, as precedent requires. As a consequence, we reject defendant's Sixth Amendment claim.

*State v. Gore*, 2009 WL 3460261, at *2–3.

The Sixth Amendment provides a defendant the right to represent himself during criminal proceedings. *See Faretta v. California*, 422 U.S. 806, 818 (1975) ("The right of self-representation finds support in the structure of the Sixth Amendment"). But, the "right of self-representation is not absolute." *See Indiana v. Edwards*, 554 U.S. 164, 171 (2008).

When a defendant does request to proceed *pro se*, he must make that request clearly, unequivocally, and in a timely manner. *See Faretta*, 422 U.S. at 835; *see also Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 161-62 (2000) ("The defendant must voluntarily and intelligently elect to conduct his own defense, and most courts require him to do so in a timely manner") (internal quotations and citations omitted). These requirements prevent defendants from both "making casual and ineffective requests to proceed *pro se*, and then attempting to upset adverse verdicts after trials at which they had been represented by counsel", as well as from proceeding *pro se* and then attempting to challenge "any subsequent conviction by alleging a denial of the right to counsel." *See Buhl v. Cooksey*, 233 F.3d 783, 792 (3d Cir. 2000) (internal quotations and citations omitted). Indeed, there exists "a strong presumption against waiver of the Sixth Amendment protections." *See Patterson v. Illinois*, 487 U.S. 285, 307 (1988) (Stevens, J., dissenting) (citing *Michigan v. Jackson*, 475 U.S. 625, 633 (1986)).

### A. Clear and Unequivocal Standard

Addressing first whether Petitioner's request was made clearly and unequivocally, the United States Supreme Court has never set forth with specificity how a defendant must indicate his desire to represent himself. *See Barney v. D'Illio*, Civ. No. 15-0057, 2018 WL 2018054, at *9 (D.N.J. May 1, 2018). There is no "talismanic formula" a defendant must recite "to open the eyes and ears of the Court to his request to invoke his/her Sixth Amendment rights under *Faretta*." *See Buhl*, 233 F.3d at 792 (quoting *Dorman v. Wainwright*, 798 F.2d 1358, 1366 (11th Cir. 1986)). Rather, the request should be analyzed under a case specific inquiry. *See Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) ("The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case.").

Several federal circuit courts of appeal have held that a petitioner's singular inquiry about whether he may proceed *pro se* does not constitute a clear and unequivocal request. *See United States v. Pena*, 279 F. App'x 702, 706 (10th Cir. 2008) ("[O]ur sister circuits have held that questions and remarks about self-representation that resemble Mr. Pena's single question to the trial judge ("[C]an I represent myself?") have not constituted a clear and unequivocal request for self-representation."). In *Pena*, during a discussion with the trial court regarding his dissatisfaction with defense counsel, the defendant asked the judge, "Then I want–can I represent myself?" *See id*. at 704. The judge did not address the defendant's request. *See id*. The Tenth Circuit held that this single inquiry was not a clear and unequivocal assertion of the defendant's intent to represent himself. *See id*. at 707. Similarly, in *Burton v. Collins*, 937 F.2d 131, 134 (5th Cir. 1991), the Fifth Circuit held that the defendant's single question, "May I represent myself?" which followed his expression of dissatisfaction with his trial counsel, was not a clear and unequivocal assertion of

his desire to proceed *pro se* either. In *Jackson v. Ylst*, 921 F.2d 882, 888-89 (9th Cir. 1990), after the defendant's motion to substitute defense counsel was denied, the defendant stated to the court: "Hey, *I don't see why* [the motion for substitute counsel] *isn't granted*. I'm doing the filing of the motion [for a new trial]. What good is [appointed trial counsel] doing for me now? I want to fight in pro per *then*. Relieve him and I do this myself." (emphasis and alterations in original). In that case, the Ninth Circuit held that the defendant had also not clearly and unequivocally asserted his right to proceed pro se, reasoning that, "[t]he trial court properly may deny a request for self-representation that is a momentary caprice or the result of thinking out loud." *See id*. at 888.

Here, Petitioner's singular inquiry about the possibility of representing himself is resoundingly similar to the cases discussed above. Although the decisions of the other circuit courts are not legal benchmarks against which to compare the New Jersey state court's adjudication of this claim, the decisions of the other circuit courts are helpful in ascertaining that the Appellate Division's application of Supreme Court precedent was not unreasonable. *See Fischetti*, 384 F.3d at 148.

Moreover, "under AEDPA the [Supreme] Court views its precedents in their particular factual settings. The touchstone precedents are not to be examined by looking to broad pronouncements or generative principles in the opinion. The 'materially indistinguishable' test presupposes a fact-specific analysis of the Supreme Court case law." *See Fischetti*, 384 F.3d at 148. In *Faretta*, where the Supreme Court issued the "clear and unequivocal" standard, the Court held that the defendant "*declared* to the trial judge that he wanted to represent himself and did not want counsel." *See Faretta*, 422 U.S. at 835 (emphasis added). In the instant case, however, Petitioner merely issued a tentative, singular inquiry about the possibility of proceeding *pro se*. This important difference demonstrates that Petitioner's case is not "materially indistinguishable"
13

from the one in *Faretta*, and therefore, does not dictate the same result.

Given the foregoing, and the AEDPA standard of deference owed to state court decisions, this Court cannot say that the Appellate Division's holding that Petitioner did not make a clear and unequivocal request to represent himself was either contrary to, or an unreasonable application of, Supreme Court precedent.

### B. Timeliness

This Court also does not find that the Appellate Division's decision that Petitioner's request was untimely was contrary to, or an unreasonable application of United States Supreme Court precedent. "There is little Supreme Court precedent that specifically addresses the issue of timing of a *Faretta* request." *See Barney*, 2018 WL 2018054, at *9. In *Faretta*, the Supreme Court approvingly noted that the defendant made his request to represent himself "weeks before trial," but did not remark upon whether a request made closer to the date of trial may be considered untimely. *See Faretta*, 422 U.S. at 807, 835. In *Martinez*, a case decided after *Faretta*, the Supreme Court explained that a defendant "must voluntarily and intelligently elect to conduct his own defense, and most courts require him to do so in a timely manner," but again, the Court did not elaborate on what constituted a "timely manner." *See Martinez*, 528 U.S. at 161-62.

The Third Circuit has indicated that a defendant's request to proceed *pro se* made immediately before trial may be timely, but it has not yet analyzed whether a state court's decision that a request is untimely would be contrary to Supreme Court precedent. In *Alongi v. Ricci*, 367 F. App'x 341 (3d Cir. 2010), the Third Circuit reversed a trial court's denial of a defendant's request to proceed *pro se* that was made immediately before jury selection. However, the Third Circuit's reversal was premised upon the trial court's misstatement of the *Faretta* standard, and the court's incorrect assertion that "the decision to permit a defendant to proceed *pro se* fell within

14

the court's discretion." *See id*. at 347. The timeliness of the defendant's request was not discussed in the court's holding. *See id*. at 347-48. In *United States v. Peppers*, 302 F.3d 120 (3d Cir. 2002), the Third Circuit held that an inmate's request to proceed *pro se*, made prior to jury selection, had also been improperly denied. In its holding, the Third Circuit stated that the district court "miss[ed] the mark" because the inquiry into the defendant's ability to represent himself was improperly focused upon the defendant's "skill and legal competency." *See id*. at 134. Thus, neither *Alongi* nor *Peppers* analyzed whether a trial court's denial of a request to proceed *pro se* made so close to trial would be contrary to Supreme Court precedent.

Other federal circuit courts of appeal have, however, expressly held that requests to proceed *pro se* made on the eve of trial are indeed untimely. In *Parton v. Wyrick*, 704 F.2d 415 (8th Cir. 1983), the Eighth Circuit held that "[e]ven after *Faretta*, *supra*, the timeliness of a waiver of counsel is a valid factor to be considered." *See id*. at 417 (citing *Fritz v. Spalding*, 682 F.2d 782, 785 (9th Cir. 1982) and *United States v. Dunlap*, 577 F.2d 867 (4th Cir. 1978)). The *Parton* court held that "the trial judge acted within his discretion in denying [the defendant's] request for self-representation made for the first time on the morning of trial." *See id*. The Fourth Circuit has similarly held that the right to self-representation can be waived if not timely asserted. *See United States v. Gillis*, 773 F.2d 549, 559 (4th Cir. 1985); *see also United States v. Mayes*, 917 F.2d 457, 462 (10th Cir. 1990) ("If the right is not asserted before trial, it becomes discretionary with the trial court whether to allow the defendant to proceed *pro se*." (internal quotations and citations omitted)). The Fifth Circuit has also plainly stated, "we find nothing in *Faretta* to suggest that the Court intended to overrule the numerous decisions holding that the trial court may properly deny a defendant's motion to defend *pro se* when it is not made until the day of trial." *See Fulford v. Maggio*, 692 F.2d 354, 362 (5th Cir. 1982), *rev'd on other grounds*, 462 U.S. 111 (1983).

It is significant to remember that:

> When assessing whether the state court acted reasonably in applying or refusing to apply that precedent, [courts] must be mindful that the issue is whether the Supreme Court law 'dictated' a result in [the instant] case, or whether the circumstances presented here were 'closely analogous' to those that formed the basis of earlier high court decisions.

*Fischetti*, 384 F.3d at 151.

Like the Fifth Circuit, this Court does not find that *Faretta* dictated that a request to proceed *pro se* made immediately prior to trial must be deemed timely. *See Fulford*, 692 F.2d at 362. A closer look at *Faretta* demonstrates that the Supreme Court incorporated into its holding the fact that Faretta's request was made "weeks before trial." *See Faretta*, 422 U.S. at 835. *See, e.g., Marshall v. Taylor*, 395 F.3d 1058, 1060-61 (9th Cir. 2005) (explaining that because "the Supreme Court incorporated the facts of *Faretta* into its holding [. . .] the holding may be read to require a court to grant a *Faretta* request when the request occurs weeks before trial.") (internal quotations omitted). Here, unlike in *Faretta*, Petitioner's request was made the day before jury selection and not weeks prior to trial. Thus, the circumstances here were not "closely analogous to those that formed the basis" of *Faretta*. *See Fischetti*, 384 F.3d at 151. Absent Supreme Court precedent that states whether a request to proceed *pro se* on the eve of trial is either timely or untimely, and based upon the several other circuits who have found that requests made immediately before trial may be denied, this Court cannot say that the New Jersey state court's decision was contrary to, or an unreasonable application of federal law.

V.  **CERTIFICATE OF APPEALABILITY**

Under 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this

standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason would not disagree with this Court's conclusion that Petitioner fails to make a substantial showing of the denial of a constitutional right, Petitioner's habeas petition is inadequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability shall not issue.

## VI. CONCLUSION

For the reasons stated above, the Petition for habeas relief is **DENIED** and a certificate of appealability shall not issue.

DATED: January 16, 2020

*/s/Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**